**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| LAURIE YATES, | &#124; |
|     PLAINTIFF, | &#124; |
| | &#124; |
| v. | &#124; Case No. 6:19-cv-0047 |
| | &#124; |
| NATIONAL MANAGEMENT RECOVERY CORP., | &#124; |
| JILL STANZIONE (a/k/a JILL STANZIONE | &#124; |
| KATZ), individually, and | &#124; |
| HARTFORD CASUALTY INSURANCE COMPANY, | &#124; |
|     DEFENDANTS | &#124; |
| | &#124; |

## PLAINTIFF'S COMPLAINT

1. This action arises out of violations of the Racketeering Influenced Corrupt Organizations Act, 18 U.S.C. § 1961, et seq., Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*., and the Consumer Sales Practices Act, R.C. § 1345.01, et seq., and the Texas Finance Code § 392.001, et seq. by Defendants National Management Recovery Corp. ("NMRC"), Jill Stanzione (a/k/a Jill Stanzione Katz) ("Stanzione").

2. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).

3. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 (a) and 28 U.S.C. § 1391(b), in that one or more defendants transact business in this judicial district and a substantial portion of the acts giving rise to this action occurred in this District.

5. Plaintiff resides in this District.

## PARTIES

6.  Plaintiff, Laurie Yates ("Plaintiff"), is an adult individual residing in Hamilton County, Texas, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3) and Tex. Fin. Code § 392.001(1), and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

7.  NMRC is a Florida business operating from Coral Springs, Florida.

8.  NMRC can be served in the state of Texas via its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, TX  78701.

9.  NMRC's website (www.nationalrecovery.net/collection-services/) (last visited February 8, 2019) states the following:

> NMRC is a multifaceted system with one purpose: to turn our clients losses into profits. We help our clients to be more successful by increasing their cash flow more quickly and efficiently than they have ever experienced before. Our clients value National Management Recovery Corp.'s ability to provide effective collection solutions while maintaining our clients image to their delinquent customer.
> …
>
> The highly structured and closely monitored system, which controls the frequency of collection activity, requires that every account be activated no less than once every three days. Internal tickler systems are utilized within each collectors working queue, which automatically prompts for contact. Within the system is a provision for letters to be requested and sent appropriate to the current collection status of the account.

10. Further, NMRC's website (www. nationalrecovery.net/about-us/) (last visited February 8, 2019) states the following:

> We provide the highest quality of collection practices, management, collection staff and client customer service support. Our management team averages 20 years of experience in the industry with several long-term relationships with numerous Fortune 500 companies. We are proud of our strong backgrounds in auditing, education and training, banking and high finance. National Management Recovery Corp. maintains the highest industry standards for licensing bonding and regulations.
>
> All of our employees are fully trained by our in house council on the importance of the FDCPA. Our clients benefit from a significant increase in their return on receivables alleviating the necessity of costly in-house collection procedures. Most importantly, our clients are assured that through National Management Recovery

Corp. collection policies and practices, as well as a customized collection approach, their potential future relationship with their delinquent customer base will be preserved.

11. The principal purpose of NMRC is the collection of debts using the mails and telephone and other means.

12. NMRC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another that arose out of transactions in which the money, property or services which are the subject of the transactions are primarily for personal, family or household purposes.

13. NMRC is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

14. Stanzione is a natural person, residing at 7169 NW 127 Way, Parkland, FL  33076.

15. Stanzione is the owner of NMRC.

16. Stanzione actively manages NMRC and directs its company policies.  Stanzione directly or indirectly instructed the employees of NMRC to act in the manner they acted when attempting collections from Plaintiff as described in the paragraphs below.

17. Stanzione regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Stanzione uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

18. Stanzione is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6) and Tex. Fin. Code § 392.001(6) and is a "third-party debt collector" as that term is defined by Tex. Fin. Code § 392.001(7) and is a "person" as that term is defined by 18 U.S.C. § 1961(3).

19. Hartford Casualty Insurance Company ("Hartford") is the surety company for the bond NMRC has on file with the Texas Secretary of State, specifically bond number 20BSBGR7755 and is liable for the acts committed by NMRC pursuant to, and the extend provided by, Chapter 392 of the Texas Finance Code and the aforementioned bond secured pursuant thereto.

20. Hartford is a foreign entity that can be served in the state of Texas via its registered agent, C T Corporation System, at 1999 Bryan Street Suite 900, Dallas, Texas 75201.

## FACTUAL ALLEGATIONS

21. At some time in the past, Plaintiff allegedly incurred a financial obligation that was primarily for personal, family or household purposes, namely an amount due and owing on a personal account (hereinafter the "Account"). Specifically, the account is alleged to be a debt owed or formerly owed to Spot Loan as a result of an alleged pay day loan. If the Account is valid, the funds from the alleged loan were used for various personal effects, but not for any business or commercial purpose whatsoever.

22. The Account constitutes a "debt" as that term is defined by 15 U.S.C. § 1692a(5) and is a "consumer debt" as that term is defined by Tex. Fin. Code § 392.001(2).

23. The Account allegedly went into default with the original creditor.

24. After the Account allegedly went into default, the Account was placed with, or otherwise transferred to NMRC for collection.

25. Plaintiff admits the existence of the account, but disputes the amount defendants attempted to collect from her.

26. Plaintiff requests that defendants cease all further communications regarding the Account.

4

27. NMRC's collector(s) were employee(s) of NMRC at all times mentioned herein.

28. NMRC acted at all times mentioned herein through its employee(s).

**RICO Enterprise**

29. During the entire course of the collection efforts against Plaintiff, Stanzione was the owner of NMRC and had active control or operation of the management of NMRC by instructing NMRC's employees in the course of their employment/agency with NMRC. Stanzione taught all employees of NMRC the specific techniques to use in their collection attempts described in the paragraphs below, or otherwise knew about and ratified the techniques used by the employees of NMRC.

30. During the entire course of the collection efforts against Plaintiff, Stanzione acted in association with her company, NMRC, regarding the conduct toward Plaintiff described below by showing up to the NMRC office(s) to work and by using NMRC equipment and by assisting NMRC in obtaining revenue.

31. NMRC is a legal entity, separate and distinct from all other defendants and separate and distinct from the association of all other defendants.  NMRC was the avenue through which Stanzione and NMRC's employees conducted their operation.  NMRC served as the receptacle of all monies fraudulently obtained, or attempted to be obtained by fraudulent means, as described below.

32. NMRC was governed by Stanzione and required one or more of NMRC's employees to act in the fraudulent manner described below in order to obtain revenue.

33. Stanzione and NMRC conspired to use NMRC and NMRC's employees to act in the fraudulent manner described below in order to obtain revenue.

34. The interactions of any two or more of the defendants as described in paragraphs 29-33 above establish the existence of an "enterprise" as defined in 18 U.S.C. § 1961(4).

**Fraudulent Collection Practices**

35. During the one year prior to the filing of this complaint, in October 2018, NMRC called Plaintiff and told her that if she did not immediately repay the Account criminal charges would be filed against her.  NMRC's employee used the name "Michael Johnson."

36. NMRC told plaintiff that it was calling for Spot Loan, but never provided plaintiff meaningful disclosure of its identity.

37. In addition to failing to identify itself properly, NMRC failed to ever provide Plaintiff with notice of her rights to dispute the validity of the debt in question.

38. While on the phone with "Michael Johnson," in order to avoid the threatened impending perils, Plaintiff agreed to make payments on the Account.  Plaintiff agreed to payments of $125 in November and December 2018 as well as payments in January and February 2019.

39. NMRC debited $125.71 from Plaintiff's bank account on November 2, 2018 and December 16, 2018.

40. For the January payment, however, Plaintiff did not have sufficient funds in her bank account and that payment was rejected by her bank.

41. After the payment in early January 2019 due to insufficient funds, NMRC called plaintiff again to collect the past due Account.

42. This call in early January 2019 was made to Plaintiff's place of employment.

43. NMRC changed the phone number that appeared on the caller ID to appear that the call was coming from "Coryell County."

6

44. The caller identified himself as "Christian" and said that he was calling from Coryell County and was trying to confirm her address because a process server had attempted to server her at her residence but no one was home. "Christian" told Plaintiff that she could call "Michael Johnson" at a toll-free number to potentially avoid the process server coming back out to find her.

45. Before calling "Michael Johnson," Plaintiff called back to the number that appeared on the caller ID and the person that answered the phone at that number identified working for the Coryell County Courthouse. Plaintiff asked if anyone there had called her about a warrant that had been issued for her and the individual on the phone said that to her knowledge no one at the courthouse had attempted to call Plaintiff regarding the Account and further informed Plaintiff that courthouse employees don't call people before attempting to serve warrants.

46. Plaintiff then called the toll-free number given to her by "Christian." An individual answered and identified as "law office." Plaintiff asked for the name of the law office and she was told "Phillips and Associates." Plaintiff then identified herself and she was connected to "Michael Johnson."

47. "Michael Johnson" told Plaintiff a warrant had been issued due to her missed payment in the days prior to the call. "Johnson" then told Plaintiff that he would talk to "the attorneys" for her and see what he could do to help her avoid being arrested. When "Johnson" came back on the phone, he told Plaintiff that she could continue making payments to avoid going to jail, but that the amount required in each payment would be $200 instead of the previously agreed upon $125.

48. NMRC then debited $200 from Plaintiff's bank account on January 16, 2019.

49. Plaintiffs total payments to NMRC as a result of the fraudulent collection scheme
directed at her was $451.42.

50. In the January phone calls with NMRC, all of NMRC's employees and agents failed to
inform Plaintiff that she was speaking with a debt collector and that the calls were
attempts to collect a debt and that any information obtained would be used for the
purpose of debt collection.  They further failed to provide meaningful disclosure of
NMRC's identity.

51. The communications from NMRC to Plaintiff as described in the above paragraphs were
intended to cause Plaintiff to believe that a lawsuit had been filed or imminently would
be filed against her.

52. The communications from NMRC to Plaintiff as described in the above paragraphs were
intended to cause Plaintiff to believe that she her nonpayment of the Account amounted
to a crime and that Plaintiff would be arrested for the nonpayment.

53. The purpose of the communications from NMRC to Plaintiff as described in the above
paragraphs was to coerce payment from Plaintiff.

54. The statements made by NMRC in the communications from NMRC to Plaintiff
described in the above paragraphs were false, deceptive and misleading as there was no
lawsuit, there was no process server looking for her, there was no warrant for Plaintiff's
arrest, there were no charges to be filed against Plaintiff and the Coryell County
Courthouse was not involved in anyway.

55. The statements described in all of the communications to Plaintiff caused Plaintiff to
suffer extreme anxiety and fear.

56. All of the defendants intended for Plaintiff to suffer extreme anxiety and fear as a result of all of the communications directed to her.

57. The purpose for which the defendants intended to cause Plaintiff's extreme anxiety and fear was to coerce a payment from Plaintiff on the Account.

58. The telephone calls each constituted a "communication" as defined by 15 U.S.C. § 1692a(2).

59. The only reason that NMRC and/or representative(s), employee(s) and/or agent(s) of NMRC made telephone call(s) to Plaintiff was to attempt to collect the Account.

60. The statements and actions of NMRC and its representative(s), employee(s) and/or agent(s) constitute illegal communication in connection with debt collection and violate 15 U.S.C. § 1692d(6) and 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) and 15 U.S.C. § 1692g.

61. All of the conduct by NMRC and/or its employees and/or agents alleged in the preceding paragraphs was done knowingly and willfully.

62. As a consequence of NMRC's collection activities and communication(s), Plaintiff seeks damages pursuant to 15 U.S.C. § 1692k(a).

63. During all times pertinent hereto, Stanzione (a) created the collection policies and procedures used by NMRC, and its respective employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of NMRC, (c) oversaw the application of the collection policies and procedures used by NMRC and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by NMRC and its employees and agents to collect debts from consumers, including the tactics and scripts that were

used to attempt to collect an alleged debt from Plaintiff as alleged in this complaint, (e)

ratified the unlawful debt collection practices and procedures used by NMRC and its

employees and agents in connection with their common efforts to collect consumer debts,

and (f) had knowledge of, approved, participated in, ratified and benefitted financially

from the unlawful debt collection practices used by NMRC and its employees and agents

in attempts to collect an alleged debt from Plaintiff as alleged in this complaint.

64. Stanzione knew that NMRC repeatedly or continuously engaged in collection practices as

described above.

65. Stanzione acted at all times mentioned herein personally and through the employee(s) of

NMRC.

66. NMRC and Stanzione, and their respective agents and employees, knew that the

information provided to Plaintiff was false.

67. NMRC and Stanzione and their respective agents and employees told Plaintiff the above

false information in order to trick, deceive and manipulate Plaintiff into transmitting

money to NMRC (and indirectly to Stanzione as well).

68. The use of telephones by NMRC and Stanzione and their respective agents and

employees to transmit the false information and to carry out their scheme to defraud

Plaintiff into paying them money as described above via wires constitutes wire fraud in

violation of 18 U.S.C. § 1343.

69. The use of banking and/or various money transfer networks via electronic means by

NMRC and Stanzione and their respective agents and employees to receive the money

from Plaintiff after conveying to Plaintiff the false information described above

constitutes wire fraud in violation of 18 U.S.C. § 1343.

**RESPONDEAT SUPERIOR**

70. The representative(s) and/or collector(s) at NMRC were employee(s) and/or agents of NMRC at all times mentioned herein.

71. The representative(s) and/or collector(s) at NMRC were acting within the course and/or scope of their employment at all times mentioned herein.

72. The representative(s) and/or collector(s) at NMRC were under the direct supervision and control of NMRC at all times mentioned herein.

73. The actions of the representative(s) and/or collector(s) at NMRC are imputed to their employer, NMRC.

**COUNT I:  VIOLATIONS OF RICO ACT, 18 U.S.C. § 1961, et seq.**

74.   The previous paragraphs are incorporated into this Count as if set forth in full.

75.   As described above, Stanzione were persons employed or associated with NMRC, each a "person" and an enterprise unto itself.

76.   The workings together of defendants Stanzione and NMRC formed the enterprise required by 18 U.S.C. § 1961(4).

77.   The activities described in paragraphs 29-69 above affected interstate commerce because the activities caused or attempted to cause money to move from the possession of one or more persons across state lines to NMRC and its owners/members.

78.   As described above, Stanzione and NMRC participated in the conduct of the enterprise's affairs.

79.   NMRC on multiple times as described above, conveyed false information to Plaintiff via telephone wires across state lines over a long period of time in order to defraud Plaintiff into paying money to NMRC, and thus established a pattern of racketeering activity.

80. Plaintiff's account of the collection practices employed by NMRC and Stanzione described above is but one account of the thousands of similar frauds committed by NMRC and Stanzione in fraudulently obtaining money from residents of Texas and many other states over a period of years.

81. As a result of the racketeering activity, and only as a result of the racketeering activity, Plaintiff paid money to NMRC, constituting injury to Plaintiff's property.

82. As such, the conduct of NMRC and Stanzione establish violations of 18 U.S.C. § 1962(c).

83. Pursuant to 18 U.S.C. § 1964(a), Plaintiff seeks an appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a).

84. Pursuant to 18 U.S.C. § 1964(c), Plaintiff seeks actual and triple damages as well as reasonable attorneys fees and costs.

## COUNT II:  VIOLATIONS OF THE FDCPA 15 U.S.C. § 1692, et seq.

85. The previous paragraphs are incorporated into this Count as if set forth in full.

86. The failure of NMRC to provide meaningful identity of itself in one or more of its communications with Plaintiff as described above constituted a violation of 15 U.S.C. § 1692d(6).

87. NMRC violated 15 U.S.C. § 1692e(2)&(3)&(4)&(5)&(7)&(8)&(10)&(11) by:

    a.  Telling Plaintiff that criminal charges would be filed against her;

    b.  Failing to inform Plaintiff in one or more communication(s) that NMRC was a debt collector and/or that it was attempting to collect a debt and/or that any information obtained would be used for the purpose of debt collection;

    c.   Manipulating the phone number that appeared on the caller ID to appear that the call was coming from "Coryell County;"

    d.   Saying that the collector was calling from Coryell County and was trying to confirm her address because a process server had attempted to server her at her residence and giving Plaintiff a number to call to avoid the process server coming to find her;

    e.   Telling Plaintiff that the collector worked at a law firm and using the fake business name of "Phillips and Associates" and pretending to be talking to attorneys and again telling Plaintiff that a warrant had been issued because of her missed payment in early January 2019;

88.    These communications caused Plaintiff to believe that legal action against her had been initiated or soon would be, despite the fact that none of the defendants had initiated, nor had the present intent of initiating, legal action against her if she did not pay the account, in violation of 15 U.S.C. § 1692e(2).

89.    These communications caused plaintiff to believe that NMRC was, or represented, an attorney who had or soon would bring a case against her, in violation of 15 U.S.C. § 1692e(3).

90.    These communications caused Plaintiff to believe that seizure, garnishment, attachment, or sale of any property or wages would result from NMRC's actions despite the fact that NMRC had no authority or intent to do any of these things, in violation of 15 U.S.C. § 1692e(4).

91.     These communications caused Plaintiff to believe that NMRC was going to do things in pursuit of collecting the Account that NMRC did not have the authority or intent to do, in violation of 15 U.S.C. § 1692e(5).

92.     These communications caused Plaintiff to believe that she had committed a crime and made her feel disgraced and embarrassed and ashamed, in violation of 15 U.S.C. § 1692e(7).

93.     These communications communicated information regarding Plaintiff's account that was known by NMRC to be false, in violation of 15 U.S.C. § 1692e(8).

94.     These communications used false representations or deceptive means, in violation of 15 U.S.C. § 1692e(10).

95.     In one or more communication with Plaintiff, NMRC failed to inform Plaintiff that it was a debt collector or that it was attempting to collect a debt or that any information obtained would be used for the purpose of debt collection, in violation of 15 U.S.C. § 1692e(11).

96.     NMRC's failure to inform Plaintiff, within five days of its first communication with Plaintiff ,of her rights to dispute the debt in question was a violation of 15 U.S.C. § 1692g.

97.     Stanzione is liable to Plaintiff for the acts of NMRC in violation of the statutes described above because she influenced and/or established the policies and procedures of NMRC and instructed NMRC's employees to act in the manner they did when communicating with Plaintiff.

98.     Plaintiff suffered actual damages in the form of economic damages of at least $451.42 as a proximate result of the actions or inactions of NMRC and Stanzione.

99.     Plaintiff suffered actual damages in the form of emotional distress as a proximate result of the actions or inactions of NMRC and Stanzione.

100.    Pursuant to 15 U.S.C. § 1692k Plaintiff seeks actual and statutory damages, reasonable attorney's fees and costs from NMRC and Stanzione.

**COUNT III:  VIOLATIONS OF THE TEXAS FINANCE CODE § 392.001, et seq.**

101.    The previous paragraphs are incorporated into this Count as if set forth in full.

102.    NMRC violated Tex. Fin. Code § 392.301(a)(5)&(6) by telling Plaintiff that charges were going to be filed against her if the Account was not repaid, by manipulating the caller ID to appear that the NMRC's call was from the Coryell County Courthouse, and by telling her that because she missed her January 2019 payment a warrant for her arrest had issued.

103.    NMRC violated Tex. Fin. Code § 392.304(a)(4) when it communicated with Plaintiff and did not inform her that the creditor on the account was NMRC.

104.    NMRC violated Tex. Fin. Code § 392.304(a)(5) when it communicated with Plaintiff and did not tell Plaintiff in the first communication that that the communication was an attempt to collect a debt and that any information obtained would be used for that purpose.

105.    By implying or stating that Plaintiff would be sued and/or that a process server was coming to serve her and/or that a warrant had been issued for her, despite the fact that the debt was merely past-due, suit had not been filed, and charges could not be brought against Plaintiff, NMRC misrepresented the character and/or nature of the debt and violated Tex. Fin. Code § 392.304(a)(8) in doing so.

15

106.    By implying or stating that a process server was coming to serve Plaintiff and/or that

charges would be filed against her and/or that a warrant had been issued and/or

imitating that the caller was speaking to attorneys about Plaintiff's account, despite

the fact that NMRC was not a law firm and does not sue consumers for past-due

accounts and is not a law enforcement agency or a prosecuting attorney, NMRC

misrepresented the nature of its services and violated Tex. Fin. Code § 392.304(a)(14)

in doing so.

107.    By implying or stating that Plaintiff would be sued and/or that a process server was

coming to serve her and/or imitating that the caller was speaking to attorneys about

Plaintiff's account, despite the fact that NMRC was not a law firm and does not

employ any lawyers for the purpose of litigating claims against consumers and,

NMRC misrepresented that the communication was from an attorney or law firm and

was being collected by a law firm violated Tex. Fin. Code § 392.304(a)(16)&(17) in

doing so.

108.    All of the statements from NMRC described above were false and deceptive and,

thus, violated Tex. Fin. Code § 392.304(a)(19).

109.    Plaintiff suffered actual damages in the form of economic damages of at least $451.42

as a proximate result of the actions or inactions of NMRC and Stanzione.

110.    Plaintiff suffered actual damages in the form of emotional distress as a proximate

result of the actions or inactions of NMRC and Stanzione.

111.    Pursuant to Tex. Fin. Code § 392.403, Plaintiff seeks damages, reasonable attorney's

fees and costs from NMRC and Stanzione.

## COUNT IV:  IMPUTED LIABILITY OF HARTFORD FOR VIOLATIONS OF TEXAS FINANCE CODE § 392.001, et seq.

112.     The previous paragraphs are incorporated into this Count as if set forth in full.

113.     Hartford is liable to Plaintiff for the damages, reasonable attorneys fees, and costs incurred by Plaintiff in pursuing her claims against NMRC, up to $10,000 (the amount of the bond) pursuant to Tex. Fin. Code § 392.102.

## COUNT V:  INVASION OF PRIVACY (INTRUSION ON SECLUSION)

114.     The previous paragraphs are incorporated into this Count as if set forth in full.

115.     NMRC engaged in extreme and outrageous conduct by falsely threatening that criminal charges would be filed against Plaintiff if the Account was not immediately repaid, falsely threatening that Plaintiff's bank account would be seized if the Account was not immediately repaid, and falsely stating that Plaintiff had been sued and that a process server was actively looking for Plaintiff and would server her with papers if the Account was not immediately repaid.

116.     Stanzione conspired with NMRC to invade Plaintiff's privacy as described above.

117.     The conduct of NMRC and Stanzione as described above was intentional and it intruded on Plaintiff's solitude, seclusion, or private affiars in such a way that would be highly offensive to a reasonable person.

118.     Plaintiff suffered serious emotional distress as a result of NMRC's conduct in that she suffered severe emotional distress, anxiety and fear.

119.     Plaintiff suffered economic damages in the amount of $451.42 as a result of the conduct of NMRC and Stanzione.

## COUNT VI:  EXEMPLARY DAMAGES

120.   The previous paragraphs are incorporated into this Count as if set forth in full.

121.   Exemplary damages should be awarded against NMRC and/or Stanzione because the harm with respect to which Plaintiff seeks recovery of exemplary damages resulted from malice (which means that there was a specific intent by NMRC and Stanzione to cause substantial injury or harm to Plaintiff) and/or gross negligence (which means that the actions and/or omissions of NMRC and Stanzione (i) when viewed objectively from the standpoint of NMRC and Stanzione at the time of the acts and/or omissions, those acts and/or omissions involved an extreme degree of risk, considering the probability and magnitude of potential harm to others and (ii) were such that NMRC and Stanzione had an actual, subjective awareness of the risk involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of  others).

## JURY TRIAL DEMAND

122.   Plaintiff is entitled to and hereby demands a trial by jury.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following:

123.  Judgment in favor of Plaintiff and against National Management Recovery Corp as follows:

   a.  Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

   b.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

   c.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.  Treble actual damages pursuant to 18 U.S.C. § 1964(c);

    e.  Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

    f.  An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

    g.  Permanently enjoin NMRC following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

    h.  Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    i.  Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    j.  Such other and further relief as the Court deems just and proper.

124.  Judgment in favor of Plaintiff and against Jill Stanzione (a/k/a Jill Stanzione Katz) as follows:

    a.  Actual damages pursuant to 15 U.S.C. 1692k(a)(1);

    b.  Statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    c.  Reasonable attorneys fees and costs pursuant to 15 U.S.C. § 1692k(a)(3);

    d.  Treble actual damages pursuant to 18 U.S.C. § 1964(c);

    e.  Reasonable attorneys fees and costs pursuant to 18 U.S.C. § 1964(c);

    f.  An appropriate order or orders to prevent and restrain violations of section 18 U.S.C. § 1962 as described in 18 U.S.C. § 1964(a);

    g.  Permanently enjoin Stanzione following trial of this cause from committing acts in violation of the statute(s) cited herein pursuant to Tex. Fin. Code § 392.403(a);

    h. Damages and reasonable attorney's fees and costs pursuant to Tex. Fin. Code § 392.403;

    i. Exemplary damages pursuant to the common law of Texas, see, e.g. *Waterfield Mortgage Co., Inc. v. Rodriguez*, 929 S.W.2d 641, 645 (Tex. App. 1996); and

    j. Such other and further relief as the Court deems just and proper.

125. Judgment in favor of Plaintiff and against Hartford Casualty Insurance Company as follows:

    a. Pursuant to Tex. Fin. Code § 392.102, the total amount of damages and reasonable attorney's fees and costs awarded to Plaintiff against NMRC under Tex. Fin. Code § 392.403, up to a total of $10,000; and

    b. Such other and further relief as the Court deems just and proper.

Respectfully submitted,

THE WOOD FIRM, PLLC

/s/ Jeffrey D. Wood
Jeffrey D. Wood, Esq.
ArkBN: 2006164
11610 Pleasant Ridge Rd.
Suite 103, PMB 208
Little Rock, AR  72223
TEL:  682-651-7599
FAX:  888-598-9022
EMAIL:  jeff@jeffwoodlaw.com
Attorney for Plaintiff

20